UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LUCAS GONZALES #489542,

           Petitioner,                      Hon. Phillip J. Green

v.                                       Case No. 1:20-cv-1237

S. L. BURT,

           Respondent.

_____/

**OPINION**

This matter is before the Court on Gonzales' petition for writ of habeas corpus. Pursuant to 28 U.S.C. § 636(c)(1), the parties have consented to proceed in this Court for all further proceedings, including an order of final judgment.   (ECF No. 17-18). For the reasons discussed herein, the Court concludes that Petitioner is not being confined in violation of the United States Constitution.   Accordingly, Gonzales' petition will be denied.

**BACKGROUND**

As a result of events that occurred in the summer of 2011, Petitioner was charged with two counts of First Degree Criminal Sexual Conduct and Assault with the Intent to Commit Criminal Sexual Conduct.   Several individuals testified at

Petitioner's jury trial.   The relevant portions of their testimony are summarized below.

**Grace Foster**

One night in the summer of 2011, Foster went to Cody Stack's residence because he was "having a bonfire."   (ECF No. 9-11, Trial Transcript, March 24, 2015, PageID.965-66).   This event took place sometime after the Fourth of July holiday, but before August 27, 2011, when Foster turned 12 years old.   (*Id.*, PageID.967).

Foster arrived at Stack's residence between 5:00 and 6:00 p.m.   (*Id.*, PageID.967-68).   When Foster arrived, Stack and his girlfriend, Samantha Porphir, were present.   (*Id.*, PageID.964-67).   Stack and Porphir, both of whom were several years older than Foster, were dating.   (*Id.*, PageID.964-65).   Various other people arrived throughout the evening, including Petitioner.[1]   (*Id.*, PageID.967-69).

Early in the day, Petitioner purchased alcohol for Stack who was not yet 21 years old.   (*Id.*, PageID.971).   Stack later gave Foster something to drink.   (*Id.*).   Foster thought it tasted a "little funny," but kept drinking it nonetheless.[2]   (*Id.*, PageID.971-72).   Later in the evening, a girl gave Foster a pill that she said was "just like ibuprofen" and "would calm [her] down."   (*Id.*, PageID.972-74).   Foster did not know what the pill was but took it anyway.   (*Id.*, PageID.973-74).

---

1 Foster did not know Petitioner at the time, but later identified him from a photo array presented to her by a Michigan State Trooper.   (*Id.*, PageID.969-70).

2 Foster later learned that Stack had given her Kool-Aid mixed with beer.   (*Id.*, PageID.971).

After taking this pill, "everything went black" and Foster remembered only "certain flashes." (*Id.*, PageID.974-75). Foster recalled "waking up and doing stuff," but she "just wasn't [herself]." (*Id.*). Specifically, Foster recalled "a body laying on top of [her] holding [her] hands and [her] feet down." (*Id.*, PageID.981). Foster "didn't see what [the person's] face looked like," but she knew the person, a Mexican male, was "raping" her. (*Id.*, PageID.975-76, 982). Foster told the person "several times" to "stop." (*Id.*, PageID.976). The man ignored Foster's requests, however, and instead told her not to "tell anybody" as he continued raping her. (*Id.*). Foster then blacked out again and woke up the next morning in Stack's residence. (*Id.*, PageID.976-77). Foster did not recall leaving Stack's residence that night but conceded that it could have occurred. (*Id.*, PageID.981). Foster also conceded that she could not positively identify who had sexually assaulted her. (*Id.*, PageID.982-88, 992-93).

**Kyle Gohram**

As of August 2014, Gohram was employed as a Michigan State Trooper. (ECF No. 9-11, Trial Transcript, March 24, 2015, PageID.1002-05). That month, Gohram was asked to "help follow up with an investigation involving a Lucas and Gabriel Gonzales." (*Id.*, PageID.1004-05).

Gohram interviewed Gabriel Gonzales on August 13, 2014. (*Id.,* PageID.1005). During this interview, Gonzales admitted that he had sex with Grace Foster when he attended a party at Cody Stack's residence. (*Id.*, PageID.1005-11).

3

Gonzales reported that Petitioner also had sex with Foster on the night in question. (*Id.*, PageID.1012).   When Gohram interviewed Petitioner one week later, Petitioner admitted that he had "vaginal intercourse with Grace [Foster] on the night of Cody Stack's party."   (*Id.*, PageID.1005, 1013-28).   During their conversation, Petitioner spoke English and did not appear to experience any difficulty understanding or communicating with Trooper Gohram.   (*Id.*, PageID.1022,1027).

**Gabriel Gonzales**

Gonzales is Petitioner's nephew.   (ECF No. 9-11, Trial Transcript, March 24, 2015, PageID.1036-37).   On an occasion in the summer of 2011, Gonzales attended a bonfire party at Cody Stack's residence.   (*Id.*, PageId.1039).   Petitioner and Grace Foster were also at this party.   (*Id.*, PageID.1040-41).

Later in the evening, Gonzales was playing cards inside when Foster entered the residence.   (*Id.*, PageID.1043-45).   Foster was intoxicated and appeared "clumsy."   (*Id.*, PageID.1045-46).   Gonzales followed Foster into a "back bedroom" where he sexually assaulted her.   (*Id.*, PageId.1046-47).   Gonzales returned to the living room and resumed playing cards while Foster stayed in the bedroom.   (*Id.*, PageID.1050-61).   Petitioner then entered the same bedroom where he remained for 5-10 minutes.   (*Id.*, PageID.1050-52).

Gonzales later left the bonfire party and walked to his grandmother's house which was located only two houses away.   (*Id.*, PageID.1052-54).   Petitioner had a bedroom in this house located in the back near the laundry room.   (*Id.*, PageID.1057).

Several hours later, Petitioner entered the residence and "took Grace Foster to the – to his room and started having intercourse with her."   (*Id.*, PageID.1054-61). Gonzales "heard [Foster] say, no, no, and stuff like that," but Petitioner "didn't stop." (*Id.*, PageID.1056, 1059).   The following day, Petitioner told Gonzales that he "had fun" the previous night.   (*Id.*, PageID.1076).

**Holly Tetro**

As of May 2014, Tetro was employed as a Michigan State Trooper.   (ECF No. 9-13, Trial Transcript, March 25, 2015, PageID.1272-76).   That month, Tetro was assigned to investigate an allegation that Grace Foster had been sexually assaulted.   (*Id.*, PageID.1273).   After speaking with Grace Foster, Tetro went to speak with Cody Stack.   (*Id.*, PageID.1273-74).   When Tetro arrived at Stack's residence, she encountered Petitioner who asserted that he had not attended the bonfire party in question.   (*Id.*, PageID.1274-75).   Trooper Tetro later spoke with Gabriel Gonzales who reported that he witnessed Petitioner sexually assault Foster at his grandmother's house.   (*Id.*, PageID.1274-79).   When Tetro spoke again with Petitioner approximately one week later, Petitioner acknowledged being at the party but denied assaulting Foster.   (*Id.*, PageID.1280-82).

After doing some additional investigating, Tetro asked Trooper Gohram to interview Petitioner.   (*Id.*, PageID.1280-82).   Gohram agreed and Tetro drove Petitioner to this interview.   (*Id.*, PageId.1281-82).   After speaking with Trooper Gohram, Petitioner spoke with Trooper Tetro and confessed to her that he had

sexually assaulted Grace Foster on the night in question.   (*Id.*, PageID.1284-86).
Petitioner exhibited no difficulty reading his written statement or otherwise
understanding and communicating with Trooper Tetro.   (*Id.*, PageID.1284-89).

**Cody Stack**

Stack met Petitioner in 2011 and the two quickly became best friends and hung
out together "almost every day."   (ECF No. 9-13, Trial Transcript, March 25, 2015,
PageID.1298-99, 1313).   At the time, Petitioner lived with his mother two houses
away from Stack's residence.   (*Id.*, PageID.1298-99).   Sometime that summer, Stack
had a bonfire party in his backyard.   (*Id.*, PageID.1300-01).   Several people
attended this party, including Petitioner, Gabriel Gonzales, and Grace Foster.   (*Id.*,
PageID.1301).

Stack sent Petitioner home at approximately 10:30 p.m. because he was "really
drunk."   (*Id.*, PageID.1304).   Petitioner did not return to the party.   (*Id.*).   At
approximately 11:00 p.m., Stack witnessed Foster take an unknown pill after which
she began "acting weird" with a "los[s] of balance" and "lack of focus."   (*Id.*,
PageID.1303).   At some point in the evening, Gabriel Gonzales and Grace Foster left
the party and "were gone for maybe an hour or more."   (*Id.*, PageID.1304-05, 1309-
10).

Other than when she left with Gonzales, Foster was never alone with anybody
at the party.   (*Id.*, PageID.1309).   Stack and his girlfriend "were keeping an eye on"
Foster because they "didn't want anything to happen to her."   (*Id.*).   Stack insisted

that he and his girlfriend "had eyes on [Foster] twenty-four seven."   (*Id.*, PageID.1330).   Stack further insisted that "there's no way [Petitioner] could have had sex with Grace Foster" on the night of the bonfire party.   (*Id.*, PageID.1324).

**Joe Fryer**

Fryer lived next door to Petitioner and his mother.   (ECF No. 9-13, Trial Transcript, March 25, 2015, PageID.1334-35).   Fryer had known Petitioner for 18 years and the two were "quite good friends."   (*Id.*, PageID.1335-37).   Petitioner "is kinda a little slow at comprehension" and often asked Fryer to read and/or explain things to him.   (*Id.*, PageID.1335-36).   However, when shown the confession Petitioner signed, Fryer conceded that it was comprised of the kind of "simple words" that Petitioner did not require help understanding.   (*Id.*, PageID.1340-41).

**Petitioner Lucas Gonzales**

Petitioner only completed the eighth grade.   (ECF No. 9-13, Trial Transcript, March 25, 2015, PageID.1344).   When he took the test to obtain a driver's license he had to have a friend help him with the written portion.   (*Id.*, PageID.1344-45).   Petitioner attended the bonfire party at Cody Stack's residence in the summer of 2011, but he left at approximately 7:30 p.m. and did not return to Stack's residence until the following day.   (*Id.*, PageID.1345-50).   Petitioner had no contact with Grace Foster that night and denied having sex with her.   (*Id.*, PageID.1347-48).

When Petitioner initially met with Trooper Gohram, he was "terrified" and "having anxiety attacks and panic attacks" because he was not taking his prescribed medication.  (*Id,* PageID.1351-52).   Petitioner did not ever ask to stop the interview, however, because he did not feel like he could terminate the interview.   (*Id.*, PageID.1352-54).   Instead, Petitioner "felt compelled" and "forced" to make the statements in which he confessed to sexually assaulting Grace Foster.   (*Id.*). Petitioner insisted that he did not sexually assault Grace Foster and "didn't comprehend" the confession that he signed.   (*Id.*, PageID.1354, 1365).

Petitioner further asserted that Gabriel Gonzales untruthfully accused him of assaulting Foster because Gonzales "got a piece of the cake out of it."   (*Id.*, PageID.1359).   Petitioner later conceded, however, that he attempted to persuade the mother of his children to testify untruthfully so as to provide him with an alibi for the night in question.   (*Id.*, PageID.1377-82).

Following the presentation of evidence, the jury found Petitioner guilty of two counts of First Degree Criminal Sexual Conduct and one count of Assault with Intent to Commit Criminal Sexual Conduct Involving Penetration.   (*Id.*, PageID.1472-73). Petitioner was sentenced to serve 25-75 years in prison.   (ECF No. 9-15, Sentencing Transcript, May 4, 2015, PageID.1514).   Petitioner appealed his convictions in the Michigan Court of Appeals asserting the following claims:

I.     Did the trial court reversibly err in denying Defendant's motion for mistrial after the prosecutor rhetorically asked defendant, "you were never charged until after the polygraph?"

II.   Did prosecutorial misconduct deprive Defendant of his due process right to a fair trial?

III.  Was trial counsel ineffective for failing to object to the prosecutor's improper questioning of witnesses thus depriving Defendant of the effective assistance of counsel?

IV.   Did Defendant's conviction for assault with intent to commit sexual penetration violate the United States and Michigan constitutions' prohibition against Double Jeopardy?

V.    Under the totality of the circumstances, particularly the repeated and prolonged nature of the questioning and the length of the investigation of Defendant before he gave the statement, Defendant's statements were involuntary and their admission denied him a fair trial.

VI.   Defendant was denied the effective assistance of trial counsel and the right to present a defense when trial counsel failed to elicit testimony and utilize evidence which would have impeached the testimony of the State's key witness.

VII.  Defendant is entitled to a new trial because a finding that his is guilty of CSC is against the great weight of the evidence given that the only evidence against Defendant was the incredible testimony of one witness with a motivation to lie.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Gonzales*, 2016 WL 7607827 (Mich. Ct. App., Dec. 29, 2016).  Raising the same issues, Petitioner unsuccessfully moved in the Michigan Supreme Court for leave to appeal. *People v. Gonzales*, 901 N.W.2d 901 (Mich. 2017).  Petitioner then filed in the trial court a motion for relief from judgment in which he asserted the following claims:

I.    Defendant is entitled to a new trial based upon newly discovered evidence where the new evidence undermines the prosecution's key witnesses' trial testimony and make a different result on retrial.

II.   Defendant received ineffective assistance of counsel where trial counsel failed to investigate and subpoena witnesses Sammy Porphir and Sandy Jones who made statements to the investigating officer that would have contradicted the alleged victim's and Gabriel Gonzales' testimony.

III.  Defendant received ineffective assistance of appellate counsel and has good cause for the failure to raise the constitutional violations set forth herein on direct appeal.

The trial court denied Petitioner's motion in an Order dated August 6, 2018. (ECF No. 9-22, PageID.1962-68). On May 20, 2019, the Michigan Court of Appeals remanded the matter to the trial court "for the purpose of reconsidering the merits of [Petitioner's] motion for relief from judgment after holding an evidentiary hearing." (ECF No. 9-24, PageID.2076). The trial court conducted an evidentiary hearing on October 30, 2019. (ECF No. 9-24, PageID.2104-89). Following this hearing, the trial court again denied Petitioner's motion for relief from judgment. (ECF No. 9-24, PageID.2193-2201). The Michigan Court of Appeals and Michigan Supreme Court both denied Petitioner's requests for leave to appeal the trial court's decision. (ECF No. 9-23, PageID.2003, 2007). Petitioner now moves for habeas relief in this Court asserting the claims identified above.

## STANDARD OF REVIEW

Gonzales' petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act (AEDPA), as it amended 28 U.S.C. § 2254.   The AEDPA amended the substantive standards for granting habeas relief under the following provisions:

> (d)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA has "modified" the role of the federal courts in habeas proceedings to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). As the Supreme Court recently emphasized, this standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

Pursuant to § 2254(d)(1), a decision is "contrary to" clearly established federal law when "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives

at an opposite result." *Ayers v. Hudson*, 623 F.3d 301, 307 (6th Cir. 2010) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). A writ may not issue simply because the reviewing court "concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams,* 529 U.S. at 411. Rather, the Court must also find the state court's application thereof to be *objectively* unreasonable. *Bell*, 535 U.S. at 694; *Williams*, 529 U.S. at 409-12.

Pursuant to 28 U.S.C. § 2254(d)(2), when reviewing whether the decision of the state court was based on an unreasonable determination of the facts in light of the evidence presented, the "factual determination by [the] state courts are presumed correct absent clear and convincing evidence to the contrary." *Ayers*, 623 F.3d at 308. Accordingly, a decision "adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." *Ibid.*

As previously noted, § 2254(d) provides that habeas relief "shall not be granted with respect to any claim that was adjudicated on the merits" unless the petitioner can satisfy either subsection therein. This requirement, however, "does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" *Harrington v. Richter*, 562 U.S. 86, 100 (2011). Instead, if a state court rejects a federal claim, a federal habeas court "*must presume*

that the federal claim was adjudicated on the merits."   *Johnson v. Williams*, 568 U.S. 289, 301 (2013).   If this presumption is overcome, however, the Court reviews the matter de novo.   *See Wiggins v. Smith*, 539 U.S. 510, 533-35 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

## ANALYSIS

### I.     Petitioner's Motion for Mistrial

On cross-examination, Petitioner asserted that he was the victim of a "conspiracy," led by Gabriel Gonzales and in which Troopers Tetro and Gohram participated, the purpose of which was to falsely charge him with sexually assaulting Grace Foster.   (ECF No. 9-13, Trial Transcript, March 25, 2015, PageID.1390-96). On re-direct, the following exchange occurred between Petitioner and his counsel:

> Q:    Mr. Gonzales, would it be fair to say that Gabriel [Gonzales] was helping himself when he gave another name such as yours as a – as another suspect?
>
> A:    Yes.
>
> Q:    He was helping himself, right?
>
> A:    Yes.
>
> Q:    And, in fact, he helped himself to a reduced charge, correct?
>
> A:    Yes.
>
> (*Id.*, PageID.1396).

Immediately thereafter, the following exchange occurred between Petitioner and the prosecuting attorney:

Q:      When [Gabriel Gonzales] first talked about you being involved, there were no charges against him, were there?

A:      (no audible response)

Q:      He was not charged at all, was he?

A:      I don't know.   I never – like I said, I never knew -

Q:      You were never charged -

A:      I never knew -

Q:      - until after -

A:      - he was the one -

Q:      - the polygraph.

A:      - that raped her.   I never knew she was raped.

(*Id.*, PageID.1396-97).

Petitioner's counsel immediately objected.   (*Id.*, PageID.1397-99).   After observing that it did not appear that any of the jurors "heard it or paid attention to it," the trial judge asked Petitioner's counsel if he "want[ed] to highlight this by bringing it to their attention."   (*Id.*, PageID.1398-99).   Petitioner's counsel declined but instead moved for a mistrial.   (*Id.*, PageID.1399-1401).   The trial judge denied Petitioner's motion, finding that the prosecutor's polygraph reference was isolated and inadvertent.   (*Id.*, PageID.1403-05).   The judge further observed that the reference was not intended to bolster the credibility of a witness and there was no

14

reference to the results of any polygraph examination. (*Id.*, PageID.1404-09). Petitioner now argues that he is entitled to relief because the trial judge improperly denied his motion for mistrial.

Petitioner's claim fails, however, because "the decision to grant a mistrial is a matter of state law and is not cognizable on federal habeas review." *Barry v. Warren*, 2019 WL 7834652 at *3 (6th Cir., Dec. 11, 2019) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)); *see also, Johnson v. Stephenson*, 2023 WL 2727519 at *8 (W.D. Mich., Mar. 31, 2023) (same).

Nevertheless, the decision to deny a motion for mistrial "may impact federal constitutional rights." *Stephenson*, 2023 WL 2727519 at *8.   To the extent, however, that Petitioner argues that the prosecutor's comment violated his federal rights, the result is the same. *See, e.g., Levack v. Burton*, 2021 WL 1111269 at *15 (W.D Mich., Jan. 22, 2021) (reference to a polygraph test "does not raise a federal constitutional violation on habeas review" because "[t]he Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments"); *Swilley v. Jackson*, 2020 WL 3317139 at *13 (W.D. Mich., May 19, 2020) (same).   Accordingly, this claim is rejected.

15

## II.    Prosecutorial Misconduct

Petitioner alleges that his right to a fair trial was violated by improper questioning by the prosecutor.

When a petitioner makes a claim of prosecutorial misconduct, "the touchstone of due process analysis...is the fairness of the trial, not the culpability of the prosecutor."  *Cockream v. Jones*, 382 Fed. Appx. 479, 484 (6th Cir., June 29, 2010) (quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).   The issue is whether the prosecutor's conduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process."   *Gillard v. Mitchell*, 445 F.3d 883, 897 (6th Cir. 2006) (quoting *Darden v. Wainwright*, 477 U.S. 168, 181 (1986)); *see also*, *Givens v. Yukins*, 2000 WL 1828484 at *6 (6th Cir., Dec. 5, 2000) ("[t]he aim of due process is not punishment of society for the misdeeds of the prosecutor but avoidance of an unfair trial to the accused") (quoting *Phillips*, 455 U.S. at 219).

Accordingly, even if the challenged comments were improper, habeas relief is available only where the comments were "so flagrant as to render the entire trial fundamentally unfair."   *Gillard*, 445 F.3d at 897.   It must also be remembered that this Court "does not possess supervisory powers over state court trials" as "it is the responsibility of the state courts to police their prosecutors."   *Gordon v. Burt*, 2016 WL 4435355 at *11 (W.D. Mich., Aug. 23, 2016) (quoting *Byrd v. Collins*, 209 F.3d 486, 529 (6th Cir. 2000)).

16

A.      Examination of Grace Foster

Petitioner argues that his right to a fair trial was violated when the prosecutor asked Foster "numerous rhetorical and leading questions that called for speculation." Petitioner has identified two such questions.

First, on direct examination the prosecutor asked Foster, "[i]s it possible from the state you were in from the stuff that was given to you by these people at the party that you could have been sexually assaulted at different places?"  (ECF No. 9-11, Trial Transcript, March 24, 2015, PageID.981).   Second, on re-direct the prosecutor asked Foster, "[b]ased on your state, is it possible that someone did have sexual intercourse with you in a bedroom at Cody Stack's house?"   (*Id.*, PageID.995).

Petitioner fails to articulate or argue how these questions were so unfair as to deny him the right to a fair trial.   As the Michigan Court of Appeals noted in rejecting this claim, "a considerable amount of leeway may be given to a prosecutor to ask leading questions of child witnesses."  *Gonzales*, 2016 WL 7607827 at *3.   As the court further observed, "to the extent the prosecutor asked the victim about what 'could' have occurred while she was 'blacked out,' in context, these questions were not a request for the victim to speculate on what happened that evening, but instead served to demonstrate the degree of the victim's intoxication and lack of memory of the night of the bonfire."   *Ibid.*

The Court discerns nothing improper about the prosecutor's questioning of Grace Foster.   Moreover, even if the Court assumes that the prosecutor's questions ran afoul of Michigan law or court rules, Petitioner fails to articulate how such questions were fundamentally unfair or deprived him of a fair trial.   The Court, therefore, finds that the rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

B.     Examination of Cody Stack

Petitioner next argues that his right to a fair trial was violated when the prosecutor "asked numerous argumentative questions when examining Cody Stack." Petitioner has identified two exchanges in support of this claim.

First, on cross-examination, the prosecutor explored why Stack failed to previously mention to law enforcement certain things, arguably helpful to Petitioner's cause, that he described in his direct examination.   (ECF No. 9-13, Trial Transcript, March 25, 2015, PageID.1317-28).   At one point, Stack asserted, "I don't know how I could have" reported the information in question prior to trial.   (*Id.*, PageID.1323). This led to the following exchange:

A:     I don't really know how the court system works.

Q:     Oh, really? Do you want to go down that road?

A:      I don't know if I should.

Q:      I don't think you should.   You know exactly how the court system
        works, don't you?

(*Id.*, PageID.1324).

The Court fails to discern how this questioning was fundamentally unfair or denied Petitioner a fair trial.   Stack appeared to open the door to the question whether he knew how the court system worked, a matter that was relevant to the prosecutor's legitimate line of questioning.   As the Michigan Court of Appeals noted in rejecting this claim, "[i]n the context of Stack's responses during cross-examination, even if the questions were somewhat argumentative, we fail to see how the prosecutor's conduct amounted to misconduct or denied defendant a fair trial." *Gonzales*, 2016 WL 7607827 at *3.

Second, the prosecutor asked Stack whether Grace Foster, on the night in question, was "pretty vulnerable" or "easy prey."  (ECF No. 9-13, Trial Transcript, March 25, 2015, PageID.1331).   Again, the Court fails to discern how this questioning was fundamentally unfair or denied Petitioner a fair trial.   The Michigan Court of Appeals rejected this claim, noting that "[t]hese questions, which essentially asked Stack's opinion on the degree of the victim's intoxication based on his observations, were not improper."   *Gonzales*, 2016 WL 7607827 at *4.

The Court discerns nothing improper about the prosecutor's questioning of Cody Stack.   Moreover, even if the Court assumes that the prosecutor's questions ran afoul of Michigan law or court rules, Petitioner fails to articulate how such

questions were fundamentally unfair or deprived him of a fair trial.  The Court, therefore, finds that the rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

C.     Examination of Petitioner

Finally, Petitioner argues that his right to a fair trial was violated when the prosecutor cross-examined him in a way that improperly bolstered Grace Foster's credibility.   Again, Petitioner has identified two exchanges in support of this claim.

First, the prosecutor asked Petitioner, "Grace has no reason to make this up, correct?. . .she has no reason to make – fabricate any type of story that she was sexually assaulted?"   (ECF No. 9-13, Trial Transcript, March 25, 2015, PageID.1357).   Second, in response to Petitioner's assertions that Trooper Gohram lied regarding his interactions with Gabriel Gonzales, the prosecutor asked Petitioner, "so you're saying [Trooper Gohram is] going to come in and testify and perjure himself and risk his whole career and livelihood for you?"   (*Id.*, PageID.1384).

The Michigan Court of Appeals rejected this claim, concluding that even if the prosecutor's questions constituted an improper request for Petitioner to comment on the credibility of other witnesses, "given defendant's confession and the other evidence of his guilt, defendant has not established outcome determinative

prejudice." *Gonzales*, 2016 WL 7607827 at *4.  The court further noted that "any prejudicial effect could have been alleviated by a timely objection and curative instruction, and the jury was in fact instructed on the assessment of witness credibility." *Ibid.*

The Court finds that the rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law.  Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## III. Double Jeopardy

Petitioner argues that his convictions and sentences for both (1) first degree criminal sexual conduct and (2) assault with intent to commit sexual penetration constitutes double jeopardy in violation of the Fifth Amendment.

The Double Jeopardy Clause of the Fifth Amendment, applicable to the states via the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  *Volpe v. Trim*, 708 F.3d 688, 695-96 (6th Cir. 2013) (quoting U.S. const. amend. V).   The Double Jeopardy Clause prohibits: (1) a second prosecution for the same offense following an acquittal; (2) a second prosecution for the same offense following a conviction; and (3) multiple punishments for the same offense.  *Volpe*, 708 F.3d at 696 (citations omitted). Petitioner's claim implicates this third protection.

When assessing whether punishment under two federal statutes violates double jeopardy, courts employ the *Blockburger* same elements test. *Ibid.* (the Supreme Court developed the *Blockburger* same elements test "to determine whether *Congress* had authorized cumulative punishments") (emphasis added). But the *Blockburger* test is a "rule of statutory construction, not a constitutional test in and of itself." *Ibid.* (citations omitted). Stated differently, "[l]egislative intent is the touchstone; it, and not the *Blockburger* test, determines whether two offenses are the same and, if so, whether multiple punishments are nevertheless intended." *Jackson v. Smith*, 745 F.3d 206, 211 (6th Cir. 2014) (quoting *Albernaz v. United States*, 450 U.S. 333, 344 (1981) ("with respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended")). Where the legislature has failed to express its intent on the question of multiple punishments, the state is "free to create their own tests, whether by statute or through judicial decisionmaking." *Smith*, 745 F.3d at 211.

In evaluating Petitioner's claim, the Michigan Court of Appeals first observed that "[n]owhere in the [criminal sexual conduct] chapter does the Legislature clearly express its intention with regard to the permissibility of multiple punishments." *Gonzales*, 2016 WL 7607827 at *5. Accordingly, the elements of the subject offenses must be examined. *Ibid.* Where an express indication of legislative intent is lacking, the Michigan courts employ the *Blockburger* same elements test. *See, e.g.,*

22

*People v. Garland*, 777 N.W.2d 732, 734 (Mich. Ct. App. 2009). Pursuant to this assessment, if each offense "requires proof of a fact which the other does not," the Constitution's Double Jeopardy protections have not been violated. *Ibid.* (quoting *Blockburger v. United States*, 284 U.S. 299, 311 (1932)).

Petitioner was convicted of first degree criminal sexual conduct for engaging in sexual penetration of a victim under 13 years of age. Mich. Comp. Laws § 750.520b(1)(a). The elements of this offense are (1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age. *See, e.g., People v. Hammons*, 534 N.W.2d 183 (Mich. Ct. App. 1995). First degree criminal sexual conduct is a general intent crime. *People v. Nyx*, 734 N.W.2d 548, 552 (Mich. 2007). Petitioner was also convicted of assault with intent to commit sexual penetration. The elements of this offense are (1) an assault and (2) accomplished with the intent to commit criminal sexual conduct involving penetration. *See, e.g., People v. Nickens*, 685 N.W.2d 657, 661 (Mich. 2004). This is a specific intent crime. *Ibid.*

The Michigan Court of Appeals ultimately rejected Petitioner's Double Jeopardy challenge, concluding that:

> Considering the elements of each offense, each charge requires proof of an element that the other does not, so there is no double jeopardy violation. [First degree criminal sexual conduct] require[s] proof of sexual penetration with a minor under 13 years of age, whereas neither sexual penetration nor the victim's age are an element of [assault with intent to commit criminal sexual conduct]. Conversely,

[assault with intent to commit criminal sexual conduct] requires proof that defendant intended to commit [criminal sexual conduct] involving penetration, whereas the defendant's intent is not an element of [first degree criminal sexual conduct].   Therefore, because each offense contains an element that the other does not, defendant's convictions for [first degree criminal sexual conduct] and assault with intent to commit sexual penetration do not violate constitutional protections against double jeopardy.

*Gonzales*, 2016 WL 7607827 at *5.

The Court finds that the rejection of this claim by the Michigan Court of Appeals is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

## IV.   Admission of Petitioner's Confession

As previously noted, Petitioner confessed to sexually assaulting Grace Foster. Petitioner now argues that the admission of his confession was improper and violated his right to a fair trial.

When law enforcement uses "interrogation techniques that coerce a confession, 'they must be condemned under the Due Process Clause of the Fourteenth Amendment.'"   *Michael v. Butts*, 59 F.4th 219, 227 (6th Cir. 2023) (quoting *Miller v. Fenton*, 474 U.S. 104, 109-10 (1985)).   Accordingly, to withstand constitutional scrutiny, "confessions must be voluntary" as determined by the totality of the circumstances.   *Butts*, 59 F.4th at 227.   Specifically, the Court "must evaluate the

totality of the circumstances surrounding the interrogation to determine whether the defendant's 'will [was] overborne and his capacity for self-determination critically impaired.'"  *Loza v. Mitchell*, 766 F.3d 466, 477 (6th Cir. 2014) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26 (1973)).

Coercion can be "mental as well as physical," but "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary.'"  *Loza*, 766 F.3d at 477-78 (quoting *Colorado v. Connelly*, 479 U.S. 157, 167 (1986) and *Blackburn v. Alabama*, 361 U.S. 199, 206 (1960)).   The Court must also consider "'the length of the interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health' and the failure of the police to advise the defendant of his *Miranda* rights."  *Loza*, 766 F.3d at 478 (quoting *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993)).   Importantly, "[i]f a defendant has been advised of his *Miranda* rights and voluntarily waived them, it will be difficult to claim that his confession was nonetheless involuntary."  *Loza*, 766 F.3d at 478 (quoting *Missouri v. Seibert*, 542 U.S. 600, 609 (2004)).

Prior to trial, Petitioner moved to suppress his confession.   (ECF No. 9-3, Hearing Transcript, November 3, 2014).   At the suppression hearing, the following testimony was presented.

Trooper Holly Tetro spoke with Petitioner on two occasions.   (*Id.*, PageID.391).   On the first occasion, Petitioner was neither handcuffed nor placed under arrest.   (*Id.*).   Petitioner was informed of his *Miranda* rights which he

acknowledged he understood and agreed to waive. (*Id.*, PageID.393-94). During this encounter, Petitioner neither indicated that he did not understand what he was being asked nor asked for an interpreter. (*Id.*, PageID.394).

Trooper Tetro spoke with Petitioner a second time when Petitioner volunteered to participate in a polygraph examination. (*Id.*, PageID.394-95). Petitioner was neither handcuffed nor placed under arrest. (*Id.*, PageID.395). Petitioner never indicated that he did not understand what he was being asked and did not request an interpreter. (*Id.*). Prior to participating in the polygraph examination, Trooper Kyle Gohram explained to Petitioner his rights vis-à-vis polygraph examinations. (*Id.*, PageID.406-14). Petitioner acknowledged that he understood his rights and agreed to participate in the examination. (*Id.*). During the examination, Petitioner never indicated that he did not understand what he was being asked and never asked to terminate the examination. (*Id.*, PageID.414-15).

Following the polygraph examination, Petitioner was informed of his *Miranda* rights, which he agreed to waive before confessing to sexually assaulting Grace Foster. (*Id.*, PageID.395-96, 416-20). After his confession was reduced to writing, Petitioner acknowledged that he understood it before signing it. (*Id.*, PageID.416-20).

Petitioner acknowledged that Trooper Gohram informed him of his rights prior to the polygraph examination. (*Id.*, PageID.431-33). Petitioner acknowledged that he never asked to discontinue questioning or otherwise terminate his encounters with

Troopers Tetro and Gohram.   (*Id.*, PageID.433-34).   Petitioner asserted that he felt "threatened" by Trooper Gohram but nonetheless continued to speak with him.   (*Id.*, PageID.435-36).   Petitioner conceded that he spoke and understood English, at least well enough to perform his factory job.   (*Id.*, PageID.436).   Petitioner acknowledged that he understood the Troopers when he was speaking with them.   (*Id.*, PageID.436-37).

The trial court denied Petitioner's motion to suppress.   Specifically, the court concluded that Petitioner was "fluent in English" and "had no problem" understanding the Troopers' questions or the forms they presented him with.   (*Id.*, PageID.441-46).   The court further found that Plaintiff sufficiently understood the rights that the Troopers explained to him at various times.   (*Id.*).   Thus, the court found that the totality of the circumstances compelled the conclusion that Petitioner's confession was voluntary and, therefore, admissible.   (*Id.*).

The Michigan Court of Appeals rejected Petitioner's claim likewise finding that the totality of the circumstances supported the conclusion that Petitioner's confession was made voluntarily.   *Gonzales*, 2016 WL 7607827 at *7.   The Court finds that the rejection of this claim is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

## V.    Great Weight of the Evidence

Petitioner next argues that his conviction is against the great weight of the evidence.   This claim is based upon Michigan law and is, therefore, not cognizable on federal habeas review.   *See, e.g., McClure v. Schroeder*, 2021 WL 6197134 at *2 (6th Cir., Nov. 2, 2021).   To the extent Petitioner's claim is interpreted as asserting that there did not exist sufficient evidence to support his conviction, such is rejected.

Claims challenging the sufficiency of the evidence are governed by the standard articulated in *Jackson v. Virginia*, 443 U.S. 307 (1979), pursuant to which it must be determined whether viewing the evidence in the light most favorable to the prosecution and according the benefit of all reasonable inferences to the prosecution, any rational trier of fact could have found Petitioner guilty beyond a reasonable doubt.   *See O'Hara v. Brigano*, 499 F.3d 492, 499 (6th Cir. 2007) (citing *Jackson*, 443 U.S. at 319-26).

When determining whether there exists sufficient evidence to support a conviction the Court may not weigh the evidence, assess the credibility of the witnesses, or substitute its judgment for that of the jury.   *See United States v. Paige*, 470 F.3d 603, 608 (6th Cir. 2006).   Furthermore, where the record supports conflicting inferences the Court "must presume - even if it does not affirmatively appear in the record - that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."   *O'Hara*, 499 F.3d at 499 (quoting *Jackson*, 443 U.S. at 326).   It must also be remembered that "circumstantial

28

evidence is entitled to the same weight as direct evidence" and "circumstantial evidence alone is sufficient to sustain a conviction."   *United States v. Mack*, 808 F.3d 1074, 1080 (6th Cir. 2015).

Petitioner was convicted of first degree criminal sexual conduct for engaging in sexual penetration of a victim under 13 years of age.   Mich. Comp. Laws § 750.520b(1)(a).   The elements of this offense are (1) the defendant engaged in sexual penetration with another person and (2) the other person was under 13 years of age.   *See, e.g., People v. Hammons*, 534 N.W.2d 183 (Mich. Ct. App. 1995).   The evidence detailed above sufficiently supported Petitioner's convictions of this offense. Petitioner was also convicted of assault with intent to commit sexual penetration. The elements of this offense are (1) an assault and (2) accomplished with the intent to commit criminal sexual conduct involving penetration.   *See, e.g., People v. Nickens*, 685 N.W.2d 657, 661 (Mich. 2004).   Again, the evidence detailed above sufficiently supported Petitioner's conviction of this offense.   Accordingly, this claim is rejected.

## VI.   Actual Innocence

Petitioner next asserts that he is entitled to relief based on "newly discovered evidence" that reveals he did not sexually assault Grace Foster.   Specifically, Petitioner asserts that an affidavit executed by Janna Stansberry establishes that Gabriel Gonzales' testimony that he witnessed Petitioner sexually assaulting Foster was untrue.   The Court interprets Petitioner's argument as asserting a claim of

actual innocence.    As the Supreme Court has held, however, "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation."    *Herrera v. Collins*, 506 U.S. 390, 400 (1993).    As the Court further observed, "habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."    *Ibid.*

In her affidavit, Stansberry asserts that she was in a relationship with Gabriel Gonzales from November 2014 through March 2016.    (ECF No. 1-1, PageID.205). According to Stansberry, Gonzales lied "about seeing [Petitioner] entering the room where Grace [Foster] was sleeping" and "about seeing [Petitioner] having sex with" Foster.    Stansberry further asserts that Gonzales lied "because he was afraid of receiving a long prison sentence."    Stansberry fails to indicate when Gonzales made the alleged statements in question.

Petitioner offers no explanation why Stansberry waited more than one year after her relationship with Gonzales ended to execute her affidavit.    Moreover, considering Petitioner's properly admitted confession, Stansberry's affidavit does not establish that Petitioner was "actually innocent."    Finally, Petitioner fails to establish that his constitutional rights were violated in this matter.    Accordingly, this claim is rejected.    *See, e.g., Legrone v. Birkett*, 571 Fed. Appx. 417, 421 (6th Cir.,

July 7, 2014) (claim of actual innocence based on untimely affidavit "offered without explanation as to the delay" is insufficient to warrant relief).[3]

## VII.  Ineffective Assistance of Counsel

Lastly, Petitioner asserts that he is entitled to habeas relief due to the ineffective assistance of both his trial and appellate counsel.   Specifically, Petitioner argues this his trial attorney failed to: (1) object to improper questioning; (2) present evidence which would have impeached Gabriel Gonzales; and (3) present testimony from Sammy Porphir and Sandy Jones.   Petitioner further argues that his appellate counsel was ineffective for failing to assert this later issue on direct appeal.

To establish ineffective assistance of counsel, Petitioner must show both deficient performance by his counsel and prejudice resulting therefrom.   *See Premo v. Moore*, 562 U.S. 115, 121 (2011) (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).   To establish deficient performance, Petitioner must show that "counsel's representation fell below an objective standard of reasonableness."   *Premo*, 562 U.S. at 121 (quoting *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).   A court considering a claim of ineffective assistance must apply a "strong presumption that counsel's representation was within the 'wide range' of reasonable professional

---

3 The Court further notes that Petitioner's appellate counsel later informed the trial court that based upon subsequent conversations with Stansberry, counsel concluded that Stansberry's affidavit was not accurate.   (ECF No. 9-24, Hearing Transcript, October 30, 2019, PageID.2108).   Specifically, counsel informed the court that while Stansberry "believes that [Gonzales] lied at the trial," she conceded that Gonzales never actually told her that he lied at trial.   (*Id.*).   Petitioner also reported that the affidavit Stansberry signed was drafted by a fellow inmate.   (*Id.*, PageID.2157-58).

assistance." *Premo*, 562 U.S. at 121 (quoting *Strickland*, 466 U.S. at 689). Petitioner's burden is to show that "counsel made errors so serious that [he] was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Premo*, 562 U.S. at 121-22 (quoting *Strickland*, 466 U.S. at 687).

Petitioner must further establish that he suffered prejudice as a result of his attorney's allegedly deficient performance.   Prejudice, in this context, has been defined as "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   *Premo*, 562 U.S. at 122 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)); *see also*, *Mahdi v. Bagley*, 522 F.3d 631, 636 (6th Cir. 2008).   In the context of a sentencing proceeding, Petitioner must demonstrate that there exists a reasonable probability that, but for counsel's errors, he would have received a more favorable sentence.   *See, e.g., Stumpf v. Robinson*, 722 F.3d 739, 753-54 (6th Cir. 2013) (to prevail on a claim that counsel rendered ineffective assistance at sentencing, petitioner must demonstrate that there exists a reasonable probability that absent counsel's errors he would have received a different sentence).

The issue is whether counsel's representation "amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom."   *Premo*, 562 U.S. at 122 (quoting *Strickland*, 466 U.S. at 690). This is a heavy burden for Petitioner to meet, because he must establish that his

counsel's performance was "so manifestly ineffective that defeat was snatched from the hands of probable victory." *Jacobs v. Mohr*, 265 F.3d 407, 418 (6th Cir. 2001).

As the Supreme Court has made clear, even when reviewing an ineffective assistance of counsel claim *de novo*, "the standard for judging counsel's representation is a most deferential one." *Premo*, 562 U.S. at 122. Likewise, the standard by which petitions for habeas relief are judged is "highly deferential." Thus, when reviewing, in the context of a habeas petition, whether a state court unreasonably applied the *Strickland* standard, review is "doubly" deferential. *Id.* (citations omitted). As the *Premo* Court concluded:

> The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating reasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id.* at 122-23 (internal citations omitted).

A.      Failure to Object to Questioning

Petitioner argues that his trial counsel was ineffective for failing to object to the questioning which comprises his prosecutorial misconduct claim. As discussed above, however, there was nothing improper about the questioning at issue. As such, counsel's failure to object cannot constitute deficient performance. Furthermore, even if the Court assumes that counsel's failure to object was deficient, Petitioner has failed to articulate how his attorney's failure prejudiced his defense.

33

The Michigan Court of Appeals rejected this claim. *Gonzales*, 2016 WL 7607827 at \*8. The Court finds that this determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

B.   Failure to Present Impeachment Evidence

Petitioner next argues that his attorney rendered ineffective assistance by failing to sufficiently impeach and/or discredit Gabriel Gonzales' testimony. Petitioner asserts that Gonzales made inconsistent statements to Trooper Holly Tetro and that his attorney should have impeached Gonzales regarding such. On cross-examination, counsel did, in fact, impeach Gonzales about the statements he made to Trooper Tetro. Specifically, counsel got Gonzales to acknowledge that he lied to the police because he did not want to get in trouble. (ECF No. 9-11, Trail Transcript, March 24, 2015, PageID.1073-74).

Petitioner's argument appears to be that his attorney did not cross-examine Gonzales in the specific way he would have preferred. Petitioner has failed to establish that his attorney's performance in this regard was deficient. More significantly, however, even if the Court assumes that counsel's performance was deficient, Petitioner has failed to articulate how he was prejudiced by his counsel's performance. Even had counsel conducted his cross-examination of Gonzales in the

34

manner Petitioner preferred, it is not reasonable to conclude that the jury would have reached a different result in light of Petitioner's confession.

The Michigan Court of Appeals rejected this claim. *Gonzales*, 2016 WL 7607827 at *8. The Court finds that this determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law. Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented. Accordingly, this claim raises no issue upon which habeas relief may be granted.

C.    Failure to Present Testimony from Sammy Porphir and Sandy Jones

Petitioner argues that his trial attorney was ineffective for failing to subpoena Samantha Porphir and Sandy Jones to testify at his trial.

At the *Ginther* hearing, Porphir testified that at the time of the bonfire party she was dating Cody Stack. (ECF No. 9-24, Hearing Transcript, October 30, 2019, PageID.2119-20). While at the party, Porphir observed Stack providing Grace Foster with alcohol and marijuana. (*Id.*, PageID.2128-29). Porphir also witnessed Sandy Jones give Grace Foster a pill of some kind. (*Id.*, PageID.2127). Foster, however, never passed out or got sick. (*Id.*, PageID.2129-30).

Porphir never witnessed anybody assault Foster, but she also conceded that she had been drinking and could only remember "bits and pieces" of that night. (*Id.* PageID.2126, 2130-31, 2134-25). Porphir further conceded that, while Foster went inside at some point in the evening, she had little (if any) knowledge what occurred

35

inside the house because she "mostly stayed outside."   (*Id.*, PageID.2134-36). Porphir also did not know if Foster left Stack's residence at some point that night to go elsewhere.   (*Id.*, PageID.2137).

Petitioner's trial counsel testified that he did not call Porphir to testify for multiple reasons.   First, given Porphir's knowledge of Grace Foster's drug and alcohol use on the night in question, counsel concluded that before calling Porphir to testify he "ethically would have had to have told her that she has a Fifth Amendment right to not testify against herself and remain silent."   (*Id.*, PageID.2163).   Counsel indicated that in his experience "when you tell a witness that – a potential witness – they tend to go back into the woodwork."   (*Id.*).

Counsel also testified that he did not question Porphir at trial because her testimony would have undermined his strategy.   (*Id.*, PageID.2164-66). Specifically, counsel indicated that, because Gabriel Gonzales directly implicated Petitioner, it was important that he discredit Gonzales.   (*Id.*).   Counsel felt that Cody Stack's testimony helped in this regard, particularly his observation that, in his opinion, Petitioner could not have assaulted Foster on the night in question.   (*Id.*). Because Porphir's testimony would have contradicted Stack's testimony in certain respects, counsel did not want her to testify.   (*Id.*).

Counsel's decision not to question Porphir at trial was not unreasonable. Moreover, even if the Court assumes that counsel's decision was deficient, Petitioner cannot demonstrate that he was prejudiced by such.   Porphir confirmed that Foster

was given drugs and alcohol on the night in question.   Porphir conceded that she had little (if any) knowledge of what occurred inside the residence after Foster went inside.   Finally, Porphir conceded that because she had been drinking she could only remember "bits and pieces" of that night.   It is not reasonable to argue that Porphir's testimony would have resulted in Petitioner's acquittal.

As for Petitioner's claim that counsel was ineffective for failing to question Sandy Jones at trial, even if the Court assumes that such was deficient, Petitioner offers no evidence that Jones would have offered testimony favorable to his cause. Petitioner's speculation as to what Jones might *possibly* have been able to testify to is insufficient.   In short, Petitioner cannot establish that he was prejudiced by his attorney's decision not to question Jones at trial.

The trial court rejected these claims.   (ECF No. 9-24, PageID.2197-2200). The Court finds that this determination is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

D.    Failure to Raise These Claims on Appeal

Finally, Petitioner argues that his appellate counsel was ineffective for failing to assert on direct appeal the claim above that his trial counsel was ineffective for failing to question Samantha Porphir and Sandy Jones at trial.   As discussed above,

however, this claim was without merit.   As such, it could not have constituted deficient performance for Petitioner's appellate counsel to not assert such.

The trial court rejected this claim.   (ECF No. 9-24, PageID.2200-2201).   The Court finds that this decision is neither contrary to, nor involves an unreasonable application of, clearly established federal law.   Furthermore, this decision was not based on an unreasonable determination of the facts in light of the evidence presented.   Accordingly, this claim raises no issue upon which habeas relief may be granted.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that Petitioner is not being confined in violation of the laws, Constitution, or treaties of the United States.   Accordingly, Gonzales' petition for writ of habeas corpus is **DENIED**.

The undersigned further concludes that a certificate of appealability in this matter is inappropriate.   Accordingly, the Court denies Petitioner a certificate of appealability.   *See Slack v. McDaniel*, 529 U.S. 473 (2000); *Miller-El*, 537 U.S. at 336.

**IT IS SO ORDERED.**

Date: May 1, 2023                              /s/ Phillip J. Green
                                               PHILLIP J. GREEN
                                               United States Magistrate Judge